UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERRY L.,[1]<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>Defendant. | No. 4:18-CV-05019-EFS<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

Before the Court, without oral argument, are cross summary-judgment motions.[2] Plaintiff Sherry L. appeals the Administrative Law Judge's (ALJ) denial of benefits.[3] Plaintiff contends the ALJ: (1) erred at step one by finding that Plaintiff engaged in substantial gainful activity since the alleged onset date; (2) improperly rejected the opinion of a lay witness, Plaintiff's daughter; (3) improperly rejected the opinions of Plaintiff's medical providers; (4) improperly rejected Plaintiff's severe impairments; (5) erred in failing to find that Plaintiff's impairments met or equaled

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.
[2] ECF Nos. 16 & 17.
[3] ECF No. 16.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 1

a listed impairment; (6) erred in rejecting Plaintiff's subjective complaints; and (7) erred in failing to conduct adequate analyses at steps four and five.[4] The Court has reviewed the administrative record and the parties' briefing. For the reasons set forth below, the Court affirms the ALJ's decision, denies Plaintiff's Motion, and grants the Commissioner's Motion.

## I. <u>Standard of Review</u>

On review, the Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.[5] Substantial evidence means more than a mere scintilla, but less than a preponderance.[6] It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[7] The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence."[8]

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.[9] That said, the Court may not substitute its judgment for that of the Commissioner. If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision.[10] Further, the Court "may not reverse an ALJ's decision on account of an error that is

---

[4] *See generally* ECF No. 16.
[5] *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) citing (*Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)).
[6] *Id.* at 1110–11.
[7] *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009)).
[8] *Id.* (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008)).
[9] *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).
[10] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

harmless."[11] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[12] The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.[13]

## II. Five-Step Disability Determination

The ALJ uses a five-step sequential evaluation process to determine whether an adult claimant is disabled.[14] The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four. [15] At step five, however, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[16]

Step one assesses whether the claimant is currently engaged in a substantial gainful activity.[17] If the claimant is, benefits will be denied.[18] If not, the ALJ proceeds to the second step.

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or mental ability to do basic work activities.[19] If the claimant does not, the disability claim is denied. [20] If the claimant does, the evaluation proceeds to the third step.

---

[11] *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir.2006)).
[12] *Id.* at 1115 (citations omitted).
[13] *Id.* at 1111 citing (*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).
[14] *See* 20 C.F.R. §§ 404.1520, 416.920.
[15] *See Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).
[16] *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).
[17] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).
[18] 20 C.F.R. §§ 404.1520(b), 416.920(b).
[19] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).
[20] 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[21] If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[22] If the impairment does not, the evaluation proceeds to the fourth step.[23]

Step four assesses whether the impairment prevents the claimant from performing work he or she has performed in the past by determining the claimant's residual functional capacity (RFC).[24] If the claimant is able to perform his or her previous work, the claimant is not disabled.[25] If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience.[26] The Commissioner has the burden to show (1) that the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform.[27] If both of these conditions are met, the disability claim is denied; if not, the claim is granted.[28]

---

[21] 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). *See* 404 Subpt. P App. 1.
[22] 20 C.F.R. §§ 404.1520(d), 416.920(d).
[23] 20 C.F.R. §§ 404.1520(e), 416.920(e).
[24] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[25] *Id.*
[26] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[27] *Kail*, 722 F.2d at 1497–98; 20 C.F.R. §§ 404.1520(g), 416.920(g).
[28] 20 C.F.R. §§ 404.1520(g), 416.920(g).

## III. Facts, Procedural History, and the ALJ's Findings

Plaintiff was born on March 25, 1962, and is 54 years old.[29] Plaintiff has her two year college degree.[30] From October 2014 to March 2015, Plaintiff worked at an onion plant in Pasco, Washington, picking debris out of onions on a conveyor belt.[31] Plaintiff testified that her job ended after Plaintiff was informed she was being taken off the schedule at work.[32]

On December 23, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits,[33] and a Title XVI application for supplemental security income.[34] In both applications, Plaintiff alleged disability beginning on September 30, 2013.[35] Plaintiff's claims were initially denied and also denied upon reconsideration.[36] Plaintiff requested a hearing before an ALJ, which was held on February 3, 2016.[37] On February 26, 2016 the ALJ, M.J. Adams, rendered a decision denying Plaintiff's claim.[38]

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity from October 2014 through March 2015.[39]

---

[29] *See* Administrative Record (AR) 654.
[30] *Id.*
[31] AR 655–58.
[32] AR 659.
[33] AR 24.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] AR 24–37.
[39] AR 26.

At step two, the ALJ found the Plaintiff had one severe medical impairment: degenerative changes of the lumbar spine.[40] The ALJ also found that Plaintiff's HIV, rash/dermatitis, trigger finger, hand arthritis, knee pain, hip pain, foot problems, shoulder pain, rheumatoid arthritis, Attention Deficit Hyperactivity Disorder, memory loss, substance use disorder, and adjustment disorder were not severe.[41]

At step three, the ALJ found that Plaintiff did not have an impairment that met the severity of a listed impairment.[42]

At step four, the ALJ found that Plaintiff has the RFC to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk six hours in an eight-hour workday with usual breaks, and sit six hours in an eight-hour workday with usual breaks.[43] The ALJ also found that Plaintiff can push and pull, including operation of hand and foot controls without limitations, except those noted for lifting and carrying.[44] The ALJ stated that Plaintiff can frequently climb ramps, stairs, ladders, ropes, and scaffolds, as well as balance without limitation, and can frequently kneel, crouch, and crawl.[45] The ALJ did not find that the Plaintiff had manipulative, visual, communicative, or environmental limitations.[46] In reaching these conclusions, the ALJ found that Plaintiff's degenerative changes of lumbar spine could be reasonably expected to cause the alleged symptoms, but that her

---

[40] AR 27.
[41] AR 27–34.
[42] AR 31.
[43] AR 31–32.
[44] *Id.*
[45] *Id.*
[46] *Id.*

statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with evidence presented in the record.[47]

When determining Plaintiff's RFC, the ALJ gave little weight to the lay witness testimony of Monica Mata, Plaintiff's daughter.[48] The ALJ gave some weight to the July 2014 opinion of Dr. Steven Vanderwaal.[49] The ALJ gave greater weight to the 2014 state agency opinion of Dr. Susan Moner.[50] The ALJ gave little weight the December 2015 opinion of PA-C Ryan Law.[51] The ALJ gave some weight to the July 2014 opinion of Dr. Heather Bee, but limited weight to Dr. Bee's opinion that Plaintiff struggles to relate to others.[52]

At step five, the ALJ found that Plaintiff was able to perform past relevant work as a waitress, bartender, cashier, supervisor, and agricultural produce sorter.[53] The ALJ found that these jobs do not require the performance of work-related activities precluded by Plaintiff's RFC.[54] Alternatively, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC.[55]

---

[47] AR 32.
[48] AR 34.
[49] *Id.*
[50] AR 34.
[51] *Id.*
[52] AR 35.
[53] *Id.*
[54] *Id.*
[55] AR 36.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 7

The Appeals Council denied Plaintiff's request for review,[56] making the ALJ's decision the final decision for purposes of judicial review.[57] Plaintiff filed this lawsuit on February 2, 2018.[58]

## IV. Applicable Law & Analysis

**A. The ALJ did not err in finding that Plaintiff engaged in substantial gainful activity.**

Plaintiff's work at the onion plant from October 2014 to March of 2015 is presumptively substantial gainful activity (SGA) because Plaintiff's average monthly earnings exceeded the substantial gainful employment amounts. SGA is work done for pay or profit that involves significant mental or physical activities.[59] Earnings may be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity.[60] Monthly earnings averaging more than $1,070 in 2014, and $1,090 in 2015 generally show that a claimant has engaged in substantial gainful activity.[61] Plaintiff earned $223.00 during the third quarter of 2014, $6,065.00 during the fourth quarter of 2014, and $4,951.00 during the first quarter of 2015 while working at the onion plant.[62] The ALJ therefore correctly concluded that Plaintiff's average monthly earnings of $1,293.50 in 2014 and $1,650.33 in 2015

---

[56] AR 7.
[57] 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.
[58] ECF No. 1.
[59] *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001); 20 C.F.R. §§ 404.1571–404.1572, 416.971–416.975.
[60] 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). *See Substantial Gainful Activity*, Social Security, https://www.ssa.gov/oact/cola/sga.html (last visited Nov. 19, 2018).
[61] *Id.*
[62] AR 26, 139 & 149.

exceeded the SGA amounts per month for the calendar years of 2014 and 2015, making her work presumptively SGA.

Further, substantial evidence supports the ALJ's finding that Plaintiff's work was not an "unsuccessful work attempt," and that Plaintiff therefore failed to rebut the presumption that she engaged in SGA.[63] When a claimant works for less than six months, that work will be considered an unsuccessful work attempt and not SGA if the claimant stopped working because of his or her impairment, or because of the removal of special conditions that took into account the claimant's impairment and permitted the claimant to work.[64] Plaintiff argues that she was unable to keep up with the demands of her employment and sustained multiple injuries, which resulted in the termination of her employment.[65] However, the ALJ noted that Plaintiff admitted she was unsure why her job ended.[66] Further, the ALJ found that the record did not support Plaintiff's allegations that she often missed work, was injured on the job three times, and was constantly reprimanded for sitting down at work.[67] Therefore, the ALJ properly concluded that Plaintiff's work at the onion plant was not an unsuccessful work attempt.

---

[63] AR 27.
[64] 20 CFR §§ 404.1574(c)(3), 416.974(c)(3).
[65] ECF No. 16 at 9.
[66] *Compare Lingenfelter v. Astrue*, 504 F.3d 1028, 1033 (9th Cir. 2007) (holding that where the claimant was fired after nine weeks "because he was too slow to do the work adequately" and because he "just couldn't do it anymore because of the pain," this constituted an unsuccessful work attempt) *and Taylor v. Colvin*, No. 3:13-CV-05448-RBL, 2014 WL 2216094, at *5 (W.D. Wash. May 23, 2014) (finding that claimant's work was SGA because "the record in *Lingenfelter* showed the claimant stopped working due to his impairments, whereas the record here, as plaintiff himself admits, fails to demonstrate that. Indeed, plaintiff admits he does not know why those jobs ended.") (citation omitted).
[67] *See* AR 26–27 & 658–59.

Plaintiff points to three medical reports to support her argument,[68] none of which contradict the substantial evidence that supports the ALJ's conclusion.[69] First, Plaintiff points to a March 2, 2015 report where Plaintiff presented with leg numbness resulting from a work accident.[70] Plaintiff also states that an April 16, 2015 report proves that her leg numbness was not improving and shows new injuries, including a back injury.[71] However, the April report does not state whether Plaintiff's leg numbness was improving or worsening—it only indicates that she was still being treated for leg numbness.[72] Further, the back injury indicated in the April report states that the back injury began on April 12, 2015, after Plaintiff's employment ended.[73] Finally, Plaintiff cites to an MRI from July 28, 2015—four months after Plaintiff stopped working.[74] Ultimately, the ALJ rationally concluded that the record does not show Plaintiff stopped working because of her impairment.[75]

The ALJ was not required to continue to steps two through five because Plaintiff failed at step one, therefore any subsequent errors are harmless.[76]

**B. The ALJ did not improperly reject the opinion of Plaintiff's lay witness.**

The ALJ provided sufficient reasons for giving little weight to the lay witness testimony of Monica Mata, Plaintiff's daughter. An ALJ need only give germane

---

[68] ECF No. 16 at 10.
[69] The Court also notes that the ALJ need not discuss every piece of medical evidence. *Smith v. Berryhill*, 708 F. App'x 402, 403 (9th Cir. 2017).
[70] ECF No. 16 at 10. *See* AR 474–75.
[71] *Id.*
[72] AR 476.
[73] AR 477 ("This is a new problem. Episode onset: [S]unday").
[74] ECF No. 16 at 10. *See* AR 449, 508.
[75] *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
[76] *Molina*, 674 F.3d at 1115.

reasons for discrediting the testimony of lay witnesses.[77] Ms. Manta stated that Plaintiff's back injury limits Plaintiff's ability to bend, lift, stand for long periods, and lift heavy objects.[78] The ALJ provided three particularized reasons for discounting Ms. Manta's testimony: the ALJ stated that Ms. Manta's descriptions were inconsistent with (1) Plaintiff's physical examinations, (2) Plaintiff's own testimony, and (3) Plaintiff's work at the onion plant.[79] Therefore, the ALJ did not improperly reject the opinion of Ms. Manta.

**C. The ALJ did not improperly reject the opinions of Plaintiff's medical providers.**

The ALJ properly assigned little weight to Mr. Law's December 2015 opinion,[80] some weight to Dr. Bee's July 2014 opinion, and limited weight to Dr. Bee's opinion that Plaintiff struggles to relate to others.[81]

1. Ryan Law

The ALJ properly gave the opinion of Mr. Law less weight than the opinion of Dr. Moner. Mr. Law, a physician's assistant, is considered an "other source,"[82] therefore, his opinion is entitled to less weight than opinions from acceptable medical sources.[83] The ALJ concluded that the opinion of Dr. Moner, an acceptable medical

---

[77] *Lewis*, 236 F.3d at 511.
[78] AR 213–220.
[79] *See* AR 34 & 712–13.
[80] AR 35.
[81] *Id.*
[82] Medical opinions are separated into evidence from acceptable and nonacceptable medical sources and "other sources." Physician's assistants are considered "other sources" and "nonacceptable medical sources." 20 CFR § 404.1513(d)(1).
[83] *Noe v. Apfel*, 6 F. App'x 587, 588 (9th Cir. 2001) (citing *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996)).

source, more accurately reflected the medical records and properly gave Mr. Law's opinion less weight.[84]

Further, The ALJ may discount the opinion of an "other source" by providing reasons that are germane to that witness.[85] Mr. Law diagnosed Plaintiff with degenerative disc disease and polyarthritis, concluding that Plaintiff was limited to light exertional work.[86] The ALJ provided several reasons supported by the record for discounting Mr. Law's opinion: Mr. Law's opinion was inconsistent with (1) Plaintiff's medical record; (2) Plaintiff's work at the onion plant, which required her to lift 20 pounds and stand for her entire shift; (3) Plaintiff's own report in July 2014 that she could lift up to 20 pounds, stand two hours, and walk one mile; (4) overall objective findings that Plaintiff retained intact motor and sensory function throughout her extremities.[87] Therefore, the ALJ properly discounted Mr. Law's opinion.

2. Dr. Bee's opinions

The opinion of Dr. Bee, a non-treating source,[88] was properly accorded less weight because her opinion was contradicted by the record.[89] "A report of a non-examining, non-treating physician should be discounted and is not substantial

---

[84] *See* AR 34 & 60–73.
[85] *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993).
[86] AR 448.
[87] *See* AR 35 & 412–13.
[88] AR 62.
[89] Plaintiff argues that the ALJ did not explain how Dr. Bee's conclusions were based on Plaintiff's subjective complaints rather than objective testing.[89] However, the ALJ's inference is rational because Dr. Bee's conclusion seems to be based on Plaintiff's report that she has had altercations with co-workers. *See Molina*, 674 F.3d at 1110 (concluding that Courts should uphold reasonable inferences by the ALJ); AR 415, 417 & 422.

evidence when contradicted by all other evidence in the record."[90] The ALJ gave some weight to Dr. Bee's July 2014 opinion that the claimant possessed adequate cognitive capacities to function in a number of employment roles and limited weight to Dr. Bee's opinion that the claimant struggles to relate to others.[91] The ALJ reasoned that Dr. Bee did not have the opportunity to review the longitudinal record, which supported no more than mild limitations in social functioning.[92] Additionally, the ALJ noted that the longitudinal record shows minimal mental complaints, essentially no mental health treatment, and that providers frequently described Plaintiff as having a normal mood and affect.[93] Therefore, the evidence on the record contradicted Dr. Bee's opinion and the ALJ properly disregarded it.

**D. The ALJ did not improperly reject Plaintiff's severe impairments at step two.**

Substantial evidence supported the ALJ's conclusion that Plaintiff had only one severe impairment: degenerative changes of the lumbar spine.[94] At step two, the claimant has the burden to show that he or she has a medically severe impairment or combination of impairments.[95] The ALJ will only find an impairment to be severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."[96] The "ability to do basic work activities" means possessing "the abilities and aptitudes necessary to do most jobs."[97] For Plaintiff, the most relevant activities

---

[90] *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (citation omitted).
[91] AR 30.
[92] AR 30, 33.
[93] AR 30.
[94] AR 31.
[95] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).
[96] 20 C.F.R. §§ 404.1521(a), 416.920(a).
[97] 20 C.F.R. §§ 404.1521(b), 416.920(b).

include the ability to perform physical functions such as walking, sitting, lifting, pushing, pulling, reaching, carrying, or handling.[98] "An impairment is considered 'not severe' if it is a slight abnormality that causes no more than minimal limitations in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."[99] Thus, the ALJ must have had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments.[100]

Substantial evidence indicates that the medical evidence does not establish that Plaintiff's HIV was a severe impairment because it was well controlled since beginning treatment in December 2014; thus, it did not significantly limit her ability to do basic work activities.[101] Plaintiff's testimony that she experienced fatigue from her HIV medication was not corroborated by any of the treatment notes from her former HIV provider, who noted that she was tolerating therapy well.[102]

Substantial evidence indicates that the medical evidence does not establish that Plaintiff's rash/dermatitis was a severe impairment because it was resolved within 6 months; thus, it did not significantly impair her ability to work.[103]

Substantial evidence indicates that the medical evidence does not establish that trigger finger and arthritis were severe impairments because Plaintiff's medical examinations and records, as well as her job as a produce sorter, contradicted

---

[98] 20 C.F.R. §§ 404.1522, 416.922.
[99] *Webb*, 433 F.3d at 686–87 (citations omitted).
[100] *Id.* at 687.
[101] AR 27.
[102] *See* AR 27 & 534–67.
[103] AR 27 & 417.

Plaintiff's testimony.[104] Thus, evidence did not indicate that it significantly impaired Plaintiff's ability to work.

Substantial evidence indicates that the medical evidence does not establish that shoulder, knee, and foot pain were severe impairments because Plaintiff's alleged symptoms were not consistent with Plaintiff's physical examination, medical records, and examinations.[105] Further, no provider ever ordered any imaging studies of her hips or workups of her shoulders.[106] Thus, evidence did not establish that it significantly impaired Plaintiff's ability to work.

Substantial evidence indicates that the medical evidence does not establish that ADHD was a severe impairment because Mr. Law, who diagnosed Plaintiff with ADHD, is not qualified to establish whether an individual has a medically determinable impairment.[107] Further, Dr. Bee did not diagnose Plaintiff with ADHD.[108] The ALJ also found that a diagnosis of ADHD was inconsistent with Plaintiff's education and work history.[109]

Substantial evidence indicates that the medical evidence does not establish that memory loss was a severe impairment because Dr. Bee did not find evidence of a cognitive disorder.[110]

---

[104] AR 27.
[105] AR 29.
[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] AR 30.

Substantial evidence indicates that the medical evidence does not establish that substance abuse was a severe impairment because Plaintiff was largely clean and sober since the alleged onset date of September 2013.[111]

Substantial evidence indicates that the medical evidence does not establish that adjustment disorder was a severe impairment because Plaintiff's providers consistently stated she had a normal mood and affect.[112] Further, although Dr. Bee diagnosed Plaintiff with adjustment disorder, Dr. Bee was a one-time examiner who did not have the opportunity to review the entire longitudinal record, which shows minimal mental health complaints and no mental health treatment.[113] Alternatively, the ALJ based this conclusion on Plaintiff's "Part B" ratings, which showed Plaintiff had: (1) no more than mild limits in daily living; (2) no more than mild limitations in social functioning; (3) no more than mild limits in concentration, persistence, and pace; and (4) no episodes of decompensation.[114]

**E.      The ALJ did not improperly discount Plaintiff's subjective account.**

The ALJ found that Plaintiff's medical impairment could reasonably be expected to produce the Plaintiff's alleged symptoms. The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ determines whether there is objective medical evidence of an impairment that could reasonably be expected to produce the alleged

---

[111] *Id.*
[112] AR 30–31.
[113] *Id.*
[114] *Id.*

symptoms.[115] In the present case, because the ALJ determined the Plaintiff's medical impairment could "reasonably be expected to cause the alleged symptoms," she passed the first step of the analysis.[116]

However, the ALJ properly rejected Plaintiff's subjective account of her symptoms. If a claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for doing so.[117] In making an adverse credibility determination, an ALJ may consider: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition.[118] The ALJ found that Plaintiff's allegations were out of proportion with the overall objective evidence because her symptoms were contradicted by medical evidence, including an MRI in July of 2015 and physical examination findings.[119] The ALJ also found the allegations were also inconsistent with Plaintiff's conduct, reports, work at the onion plant, and subsequent filing for and receipt of

---

[115] *Molina*, 674 F.3d at 1112 (internal quotations and citations omitted).
[116] AR 25.
[117] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted) (noting the ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony.").
[118] *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).
[119] *See* AR 32–34, 449 & 508.

1  unemployment benefits.[120] Therefore, substantial evidence existed for the ALJ to discount Plaintiff's subjective complaints.

### F. The ALJ did not err in failing to find that Plaintiff's impairments met or equaled a Listing.

The ALJ reasonably concluded that Plaintiff failed to meet Listing 1.04A.[121] At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations Number 4.[122] As the Social Security Ruling explains, each case should be evaluated based on the record.[123] Listing 1.04A, disorders of the spine, requires Plaintiff to exhibit:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[124]

The ALJ properly concluded that Plaintiff demonstrated intact motor, sensory, and neurologic function on physical examinations, as well as negative straight leg raising.[125] Accordingly, the ALJ's finding that Plaintiff did not meet listing 1.04A was supported by substantial evidence.

### G. The ALJ did not fail to meet her step four or five burden.

At step four, the ALJ properly concluded that Plaintiff was able to perform past relevant work as a waitress, bartender, cashier, supervisor, and agricultural

---

[120] AR 33 (noting that Plaintiff held herself out as "ready, able, and willing to work."). *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008) ("[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime.").
[121] AR 23–24.
[122] 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d).
[123] *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing SSR 02–01p (2002)).
[124] 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d).
[125] *See* AR 31, 523–30 & 412–13.

sorter.[126] At step four, the ALJ asks whether Plaintiff can perform any past performed work.[127] The ALJ concluded that Plaintiff's past jobs do not require the performance of work-related activities precluded by Plaintiff's RFC because the Plaintiff performed them in the last 15 years at SGA levels.[128] The ALJ also adopted the testimony of the vocational expert (VE), who opined that Plaintiff can perform all of her past relevant work.[129] Therefore, substantial evidence supported the ALJ's conclusion at step four.

While the ALJ did not need to proceed to step five, the ALJ alternatively found that there would still be a significant number of jobs in the national economy that Plaintiff could perform, even if Plaintiff's RFC was limited to medium or light work.[130] At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations."[131] An ALJ may solicit VE testimony as to the availability of jobs in the national economy.[132] A VE's testimony may constitute substantial evidence.[133] The ALJ adopted the VE's testimony that substantial jobs existed that Plaintiff could perform,[134] therefore the ALJ's conclusion was supported by substantial evidence.

---

[126] *Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005) (concluding that VE testimony can constitute substantial evidence).
[127] 20 C.F.R. §§ 404.1520(e), 416.920(e).
[128] AR 35.
[129] *See* AR 35–36 & 676–81.
[130] AR 36.
[131] *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).
[132] *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999).
[133] *Bayliss*, 427 F.3d at 1217–18. *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See also Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013).
[134] *See* AR 36–37 & 676–81.

Plaintiff argues that because the ALJ improperly rejected medical findings, severe impairments, and supported functional limitations, the VE's testimony was incomplete and of no evidentiary value.[135] This argument merely restates Plaintiff's earlier allegations.[136] The ALJ's hypothetical properly accounted for the limitations supported by the record.[137]

## V. Conclusion

In summary, the Court finds the record contains substantial evidence from which the ALJ properly concluded that Plaintiff does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.
3. **JUDGMENT** is to be entered in the Commissioner's favor.
4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  27th   day of November 2018.

                                  s/Edward F. Shea
                                  EDWARD F. SHEA
                        Senior United States District Judge

---

[135] ECF No. 16 at 19–20.
[136] *Id.*
[137] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).